# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4755 | **DATE** | 12/16/2003 |
| **CASE TITLE** | Ohio Casualty Insurance Co. vs. PETsMART, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] PETsMart's response to Ohio Casualty's motion for judgment on the pleadings and in support of its cross-motion for judgment on the pleadings (25) is construed as a motion for judgment on the pleadings. Plaintiff's motion for judgment on the pleadings (24) is denied. Defendant's motion for judgment on the pleadings (25) is granted in part and denied in part. Enter memorandum and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 1 6 2003 | |
| | Notified counsel by telephone. | | date docketed | 28 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | DEC 1 6 2003 date mailed notice | |
| SLB | courtroom deputy's initials | 03 DEC 15 PM 8:47 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| OHIO CASUALTY INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 03 C 4755 |
| v. ) | |
| ) | District Judge George W. Lindberg |
| PETsMART, INC., a corporation, ) | |
| ) | DOCKETED |
| Defendant. ) | DEC 1 6 2003 |

## MEMORANDUM AND ORDER

On September 8, 2003, Plaintiff Ohio Casualty Insurance Co. filed its three-count amended complaint for declaratory relief. Defendant PETsMART, Inc. subsequently filed its two-count counterclaim for declaratory relief on September 25, 2003.

Ohio Casualty and PETsMART have filed cross-motions for judgment on the pleadings. Ohio Casualty's motion is hereby denied. PETsMART's motion is hereby granted in part and denied in part.

*Facts and Procedural Background*

The parties' cross-motions in combination with the pleadings establish that the underlying facts are not in dispute. Ohio Casualty seeks, *inter alia*, a declaration that Ohio Casualty is not liable to defend PETsMART in *Zagorski v. Petsmart, Inc. & Cats-Are-In, LLC*, Civil Action No. 03 L 000234 (Cook County, IL Law Div.). In turn, PETsMART seeks, *inter alia*, a declaration that Ohio Casualty is required to provide such a defense.

*Zagorski* is a tort action for damages stemming from injuries allegedly suffered by a minor, Michal Zagorski, at a PETsMART store in Broadview, Illinois. Zagorski's Amended Complaint alleges that a cat scratching pole designed, manufactured, and distributed by Cats-Are-In,

28

LLC ("CAI") fell from a store shelf, striking the minor and causing injury. To recover for this alleged injury, Zagorski filed suit against PETsMART and CAI in the Circuit Court of Cook County, Illinois. Counts I and II of Zagorski's Amended Complaint allege negligence on the part of PETsMART. Counts III and IV are product liability counts alleged against CAI.

Prior to Zagorski's injury, PETsMART and CAI had entered into a Master Vendor Agreement for the sale of certain products, including cat scratching poles, to PETsMART for resale by PETsMART. Pursuant to the Agreement, CAI agreed to provide insurance for PETsMART as an Additional Insured under its Ohio Casualty Insurance Policy No. BKO (03) 52858725.[1] Moreover, the Agreement also required CAI to defend and indemnify PETsMART under certain circumstances.[2] Additionally, the parties had entered into a Hold Harmless Indemnification Letter

---

[1] Paragraph 8 of the Master Vendor Agreement provides, in pertinent part:

> 8. **Insurance.** Vendor will maintain, at its sole cost and expense, the following insurance coverage: (a) a commercial general liability insurance policy with limits for bodily injury and property damage of not less than $1,000,000 per occurrence, with an aggregate limit of $2,000,000, endorsed to include products liability and contractual liability; and (b) automobile liability insurance policy with limits not less than $1,000,000 combined single limit....The insurance policies will name PETsMART as an additional insured. Vendor will provide to PETsMART a certificate of insurance or similar binder for each policy evidencing compliance with this Agreement....

[2] Paragraph 7 of the Master Vendor Agreement provides, in pertinent part:

> 7. **Indemnity.** Vendor agrees to indemnify, defend and hold harmless PETsMART...for, from and against any and all threatened or actual claims, losses, liabilities, damages, costs or expenses (including attorneys' and experts fees and costs) of any nature whatsoever and whether arising prior to, or after the execution or termination of this Agreement..., arising out

2

Agreement prior to Zagorski's injury. Pursuant to that letter agreement, CAI agreed to:

> indemnify, defend and hold harmless PETsMART from all third party claims (i) for personal injury (including death) and property damage allegedly caused by your company's products, (ii) related alleged packaging or alleged mislabeling violations of your company's products, or alleged negligence in any instructions, or warnings, including claims arising out of negligence of the manufacturer or alleged negligence or alleged breach of warranty on the part of the manufacturer, and (iii) related to alleged false claims or representations of your company's products, and, all damages, liabilities, losses, expenses and costs, including attorneys' and professional fees, incurred by PETsMART in connection with any such claims, provided that the undersigned is notified as promptly as practical by PETsMART of all such claims....[3]

After being served with Zagorski's complaint, PETsMART tendered its defense to CAI on May 1, 2003. Ohio Casualty refused to accept the tender.

Ohio Casualty filed its Motion for Judgment on the Pleadings on November 6, 2003. In its motion, Ohio Casualty asks this Court to declare that, *inter alia*, (1) the Certificate of Insurance issued to PETsMART confers no rights on PETsMART, (2) the rights of PETsMART are determined by Ohio Casualty Insurance Policy No. BKO (03) 52858725, and (3) Ohio Casualty is not liable under the aforementioned insurance policy to defend PETsMART in *Zagorski*.

---

> of, related to or based on; (a) the Product including but limited to its manufacturing, packaging, pricing, labeling, sale or use;...(c) any claim or threatened claim for personal injury, death or property damage or loss of any nature whatsoever arising from or related to any Product or other goods sold by Vendor to PETsMART....This indemnity...will not be deemed waived, terminated or merged by PETsMART upon acceptance of or payment for the Product.

[3]The Court notes that at times the actual text of the exhibits may in fact differ from the quoted text as it appears within the parties' pleadings. However, none of these differences materially altered the Court's Memorandum and Order.

On November 21, 2003, PETsMART filed a response to Ohio Casualty's motion that included a memorandum in support of PETsMART's motion for judgment on the pleadings. As an initial matter, the Court notes that PETsMART's memorandum in support of its motion is procedurally deficient because it was not filed within the time limit designated in this Court's November 5, 2003 order. Moreover, PETsMART's untimely memorandum was not accompanied by a motion. Nevertheless, in the interest of judicial economy PETsMART's memorandum will be treated as a motion for judgment on the pleadings over Ohio Casualty's objection. PETsMART's motion asks this Court to deny Ohio Casualty's motion and declare that (1) Ohio Casualty owes PETsMART a duty to defend PETsMART in the *Zagorski* litigation, (2) Ohio Casualty must reimburse PETsMART for all attorney fees and costs incurred to date while defending itself in *Zagorski*, and (3) Ohio Casualty is estopped from asserting any policy defenses by reason of Ohio Casualty's wrongful failure to accept PETsMART's tender of defense.

*Analysis*

This Court will grant a motion for judgment on the pleadings when the moving party demonstrates that there are no material issues of fact to be resolved and it is entitled to judgment as a matter of law. *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 718-19 (7th Cir. 2002); *National Fid. Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987). The standard applied is the same standard applied to motions for summary judgment, except that the Court may only consider the contents of the pleadings. *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993). Moreover, the Court must "view the allegations of the complaint in the light most favorable to the nonmoving party." *Delgado v. Jones*, 282 F.3d 511, 515 (7th Cir. 2002) (citation omitted).

Both motions ultimately turn on the language included in CAI's Ohio Casualty

insurance policy. Although the parties present a number of arguments, this Court must only determine if the allegations presented in the *Zagorski* Amended Complaint trigger coverage under the Additional Insured - Vendors endorsement to the policy at issue. Having made that determination, the Court concludes that PETsMART is entitled to coverage under the Ohio Casualty insurance policy. Nevertheless, the Court will address each of the significant issues presented in the parties' cross-motions.

### I. Ohio Casualty Must Provide Coverage to PETsMART Under the Additional Insured - Vendors Endorsement to Ohio Casualty Insurance Policy No. BKO (03) 52858725 and Defend PETsMART in *Zagorski*.

By way of the Master Vendor Agreement, CAI named PETsMART as an Additional Insured under its Ohio Casualty insurance policy. In doing so, CAI executed the Additional Insured - Vendors endorsement to Policy No. BKO (03) 52858725 in favor of PETsMART. The Additional Insured - Vendors endorsement provides:

> WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as vendor)..., but only with respect to "bodily injury" or "property damage" arising out of "your products"...which are distributed or sold in the regular course of the vendor's business....

Although coverage under the endorsement is subject to a number of exceptions,[4] none of the

---

[4]The endorsement also provides:

1. The insurance afforded the vendor does not apply to:
   a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;
   b. Any express warranty unauthorized by you;
   c. Any physical or chemical change in the product made

exceptions enumerated therein are applicable to the facts of this case. Therefore, the Court must determine whether the alleged injuries suffered by Zagorski qualify as "'bodily injury'...arising out of "'[CAI's] products'"...which are distributed or sold in the regular course of [PETsMART's] business."

Ohio Casualty argues that PETsMART is not entitled to coverage under the Additional Insured - Vendors endorsement because Zagorski seeks "damages from PETsMART for PETsMART's own negligence, not for liability arising out of the product of CAI." Moreover, Ohio Casualty contends that the "policy was not intended to provide coverage to PETsMART for any independent acts or omissions on its behalf. The scope of coverage provided through a vendors endorsement is limited, and the endorsement only extends coverage for damages arising out of the product itself."

---

intentionally by the vendor;
d. Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;
e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;
f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;
g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

These arguments are not supported by the text of the endorsement. Although Ohio Casualty is correct that the Additional Insured - Vendors endorsement is a limited endorsement, none of the above-listed policy exceptions include alleged negligence on the part of the vendor. Instead, the endorsement merely states that coverage is offered for "'bodily injury'...arising out of "'[CAI's] products'"...which are distributed or sold in the regular course of [PETsMART's] business." Neither party has disputed that CAI's cat scratching poles "are distributed or sold in the regular course of [PETsMART's] business." Moreover, Ohio Casualty concedes in its memorandum that the cat scratching pole injured Zagorski. ("Here, although the cat scratching pole itself may have caused injuries to Zagorski....") Therefore, the endorsement on its face provides coverage for PETsMART because Zagorski's alleged injury qualifies as "'bodily injury'...arising out of" the cat scratching pole.

Case law supports this conclusion. At least one Illinois court has construed an identical Additional Insured - Vendors endorsement to provide coverage for an allegedly negligent vendor. In *Sportmart, Inc. v. Daisy Mfg. Co.*, a negligence action was brought against Sportmart in connection with its sale of a "BB" gun and pellets manufactured by Daisy. 645 N.E.2d 360, 361-62 (Ill. App. Ct. 1994). The negligence suit concerned injuries suffered by a minor while using a Daisy gun and Daisy pellets purchased from Sportmart. *Id.* at 362. Similar to the instant action, the *Sportmart* tort plaintiff did not allege product liability on the part of the store. *Id.* At the time of the sale, Sportmart was in possession of an "Additional Insured-Vendors" endorsement from Daisy with respect to a comprehensive general liability insurance policy issued by Continental Casualty Company. *Id.* at 361-62. However, neither Daisy nor Continental would accept Sportmart's tender of its defense to the negligence suit. *Id.* at 362. Accordingly, Sportmart filed an action for

7

declaratory relief. *Id.*

The *Sportmart* court held that Sportmart was covered under the Additional Insured-Vendors endorsement and that Continental had a duty to defend Sportmart in the negligence action. *Id.* at 365. In so holding, the court stated that

> [i]n determining the extent of an insurer's duty to defend, we look exclusively to the terms of the policy and the allegations of the underlying complaint....If the underlying complaint alleges facts *potentially* within the policy's coverage, the insurer is obligated to defend its insured even if the allegations are groundless, false, or fraudulent....The insurer cannot justifiably refuse to defend unless the face of the complaint clearly fails to state facts which bring the case potentially within the policy's coverage....Moreover, the underlying complaint and policy must be construed liberally in favor of the insured; any doubts or ambiguities should be resolved against the insurer who drafted the policy.

*Id.* at 362-63 (citations omitted and emphasis in original). More specifically, the court strictly construed the phrase "arising out of" against Continental and stated that synonyms for the phrase included "'connected with,' 'incidental to,' 'originating from,' 'growing out of,' and 'flowing from.'" *Id.* at 363 (citations omitted). Because the endorsement at issue in *Sportmart* included no policy exclusion for injuries that were directly caused by Daisy's product, but "attributable to the negligence" of Sportmart, the court construed the policy terms against Continental and in favor of coverage. *Id. See also Pep Boys v. Cigna Indem. Ins. Co. of N. Am.*, 692 A.2d 546 (N.J. Super. Ct. App. Div. 1997).

In its reply brief, Ohio Casualty attempts to limit *Sportmart* to its facts. More specifically, Ohio Casualty argues that the *Sportmart* holding is only applicable when the complained-of injury resulted from the *use of the product* at issue. Although it may be true that Zagorski's injuries did not result from his use of the cat scratching pole for its intended purpose, this

8

Court disagrees that *Sportmart* should be confined to its facts. As noted above, the phrase "arising out of" must be strictly construed against Ohio Casualty. Accordingly, the Court finds no support for the suggestion that injuries directly inflicted by the cat scratching pole, whether through its intended use or otherwise, would not be "'connected with,' 'incidental to,' 'originating from,' 'growing out of,' or 'flowing from'" the pole. *See Sportmart*, 645 N.E.2d at 363. Moreover, the *Sportmart* opinion actually suggests this broad interpretation. *See id.* ("Therefore, the *broad language* must be construed against the insurer to require coverage for all bodily injury 'growing out of' or resulting from Daisy's product." (citations omitted and emphasis added)).

In addition to its attacks on *Sportmart*, Ohio Casualty cites a number of cases to support its argument that independent acts of negligence on the part of the vendor are somehow excluded from coverage even though CAI's product was the instrument of injury. The Court is not persuaded as all of the cases cited by Ohio Casualty may be distinguished. *Salerno v. Atl. Mut. Ins. Co.* and *Dominick's Finer Foods, Inc. v. Am. Mfrs. Mut. Ins. Co.* both involved tort actions for injuries that were in no way caused by the products for which the vendor endorsements were supplied. *See Salerno*, 6 P.3d 758, 762-63 (Ariz. Ct. App. 2001) ("Salerno did not allege that the books themselves caused an injury....The drop in the floor and the failure to warn of it, rather than the books, caused [the tort plaintiff's] injury."); *Dominick's*, 516 N.E.2d 544, 545 (Ill. App. Ct. 1987) ("[Tort plaintiff] does not claim that his injuries were attributable to the containers of...products he was delivering."); *see also Sportmart*, 645 N.E.2d at 363-64 (distinguishing *Dominick's*). *Easton v. Chevron Indus., Inc.* concerned a negligence action that did not implicate the vendor endorsement for the product at issue. *See* 602 So.2d 1032, 1041 (La. Ct. App. 1992) ("However, in addition to a strict liability claim, [the tort plaintiff] advanced a claim that [the

9

vendor] was negligent in its training of...personnel in the operation of the crane....[S]eparate contractual agreements...indicate that [the vendor] assumed the responsibility for training...employees in the use of the crane independently from [the vendor's] status as vendor."). Finally, *SDR Co. v. Fed. Ins. Co.* and *American White Cross Labs., Inc. v. Continental Ins. Co.* involved tort actions where the underlying vendor acts in question were explicitly excluded from coverage in the endorsement. *See SDR*, 242 Cal. Rptr. 534, 196 Cal. App. 3d 1433, 1435-36 (Cal. Ct. App. 1987) ("[Insurer] based its refusal on its contention that the exclusion in the vendor's endorsement [concerning use of the product in question as a container] excluded coverage for the...accident."); *Continental*, 495 A.2d 152, 155, 157 (N.J. Super. Ct. App. Div. 1985) ("In that process [the vendor] also undertook to do what the coverage here excluded; it labeled the product as its own or that of its customer....").

For all of these reasons, this Court finds that Ohio Casualty must provide coverage to PETsMART under the Additional Insured - Vendors endorsement to Ohio Casualty Insurance Policy No. BKO (03) 52858725 and defend PETsMART in *Zagorski*.

## II. PETsMART's Certificate of Insurance Does Not Independently Confer Additional Rights on PETsMART.

The Certificate of Insurance provided to PETsMART does not independently confer additional rights on PETsMART. The certificate provides, in relevant part:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

This provision is clear: PETsMART may not rely upon the certificate as an independent source from

which to determine the extent of coverage, but must instead look to the underlying policies when making that determination. *See also, e.g., American Country Ins. Co. v. Kraemer Bros., Inc.*, 699 N.E.2d 1056 (Ill. App. Ct. 1998). Nevertheless, this finding is insignificant in light of the fact that PETsMART is covered under the Additional Insured - Vendors endorsement.

### III. Ohio Casualty Need Not Provide Coverage to PETsMART Under the Blanket Additional Insured Endorsement to Ohio Casualty Insurance Policy No. BKO (03) 52858725.

CAI's Ohio Casualty Insurance Policy No. BKO (03) 52858725 was also endorsed to include a Blanket Additional Insured endorsement in favor of PETsMART. The Blanket Additional Insured endorsement provides:

> WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization whom you are required to name as an additional insured on this policy under a written contract or agreement.
>
> The written contract or agreement must be:
> (a) currently in effect or becoming effective during the term of this policy; and
> (b) executed prior to the "bodily injury," "property damage," or "personal and advertising injury."
>
> The insurance provided the additional insured is limited as follows:
> 1. That the person or organization is only an additional insured with respect to liability arising out of
>    a. Real property you own, rent, lease, or occupy; or
>    b. "your work" for that additional insured for or by you.
> 2. The limits of insurance applicable to the additional insured are those specified in the written contract or agreement or the limits available under this policy whichever are less. These limits are inclusive of and not in addition to the limits of insurance available under this policy.
> 3. The insurance provided the additional insured does not apply to liability arising out of the sole negligence of the additional insured.

11

Ohio Casualty presents compelling arguments that the Blanket Additional Insured endorsement (1) applies only to "Owners, Contractors or Lessors" and (2) covers only "liability arising out of 'real property' owned, rented, leased, or occupied by CAI, or 'your [CAI's] work' for that additional insured [PETsMART] for or by you [CAI]." Furthermore, Ohio Casualty's Amended Complaint makes clear that "your work" is defined as "[w]ork or operations performed by [CAI] or on [CAI's] behalf" or "[m]aterials, parts or equipment furnished in connection with such work or operations."

PETsMART fails to address Ohio Casualty's position. Therefore, this Court finds no reason to grant PETsMART coverage under the Blanket Additional Insured endorsement to Ohio Casualty Insurance Policy No. BKO (03) 52858725. However, in light of this Court's decision that PETsMART is covered under the Additional Insured - Vendors endorsement, this finding also lacks significance. In fact, Ohio Casualty's memorandum states: "Since this case involves a product, the determination is whether the Vendors Endorsement is applicable under the Ohio Casualty policy."

## IV.  Ohio Casualty is Not Estopped From Raising Policy Defenses.

PETsMART argues that the "words Ohio Casualty has used in its argument about policy language are not contained in the policy endorsement" and that Ohio Casualty is, therefore, "estopped from raising any policy defenses as its argument is not based on the policy verbiage." However, absolutely no authority is cited for this bald assertion. Accordingly, this Court declines to grant PETsMART the equitable relief that it requests. *See, e.g. State Farm Fire & Cas. Co. v. Martin*, 710 N.E.2d 1228, 1230-31 (Ill. 1999) ("As this court has repeatedly held, '[w]hen a complaint against the insured alleges facts within or potentially within the scope of the policy coverage, the insurer taking the position that the complaint is not covered by the policy must defend

the suit under a reservation of rights or seek a declaratory judgment that there is no coverage....If the insurer fails to take either of these actions, it will be estopped from later raising policy defenses to coverage.") (citations omitted); *Westchester Fire Ins. Co. v. G. Heileman Brewing Co.*, 747 N.E.2d 955, 964-65 (Ill. App. Ct. 2001) (same).

## V. Ohio Casualty Must Reimburse PETsMART its Reasonable Attorneys' Fees and Costs Incurred to Date While Defending Itself in the *Zagorski* Litigation.

Because Ohio Casualty has a duty to defend PETsMART in the *Zagorski* litigation, Ohio Casualty must reimburse PETsMART its reasonable attorneys' fees and costs incurred to date while defending itself in that litigation. *See, e.g., Insurance Co. of the State of Pa. v. Protective Ins. Co.*, 592 N.E.2d 117, 123 (Ill. App. Ct. 1992) (insurer under duty to defend must reimburse insured for defense costs as they are incurred).

## VI. Indemnity

Additionally, the Court must address PETsMART's request for a declaration that Ohio Casualty must indemnify PETsMART should PETsMART be found liable for damages in the *Zagorski* tort action. The Court holds that it is premature to decide this issue and that declaratory relief on this issue should be sought only after Zagorski's claims are fully litigated.

**ORDERED:** PETsMART's Response to Ohio Casualty's Motion for Judgment on the Pleadings and in Support of its Cross-Motion for Judgment on the Pleadings [25] is construed as PETsMART's motion for judgment on the pleadings and memorandum in support of the same. Ohio Casualty's motion for judgment on the pleadings [24] is denied. PETsMART's motion for judgment on the pleadings [25] is granted in part and denied in part. Each party will bear its own attorneys' fees and costs related to these declaratory judgment proceedings.

Judgment will be entered in favor of PETsMART on Ohio Casualty's Amended Complaint [10] and Counts I and II of PETsMART's counterclaim. [16] Judgment will be set forth on a separate document and entered in the civil docket. Fed. R. Civ. P. 58, 79(a). PETsMART is hereby ordered to prepare a draft Order of Judgment that defines the rights of the parties in a manner consistent with this Memorandum and submit it to the Court by no later than January 5, 2004.

DATED: 12-16-03     ENTER:

HON. GEORGE W. LINDBERG
United States District Judge

14